IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BESHAN RANDIKA KULAPALA,** | 3:15-cv-01890-BR |
| Petitioner, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| **GEETHANI MAYANTHI DELGODA,** | |
| Respondent. | |

**BROWN, Judge.**

    This matter comes before the Court on Petitioner's Verified Petition (#1) for Return of Children to their Habitual Residence.

    The Court commenced a contested evidentiary hearing on the Petition on December 23, 2015; continued the evidentiary hearing until January 5, 2016; and, at the conclusion of the January 5, 2016, evidentiary hearing, heard oral argument. At the conclusion of oral argument, the Court stated on the record its bases for its Order (#40) in which it granted the Petition and ordered the children at issue, MBK and RMK, to be returned to Sri Lanka in Petitioner's custody. The Court makes the following

1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

findings of fact and conclusions of law to memorialize the grounds for that Order.

### **FINDINGS OF FACT**

In addition to the facts to which the parties stipulated in the record, the Court also finds the following facts by a preponderance of the evidence:

In October 2013 Petitioner and Respondent sold their home in Hillsboro, Oregon, and moved with their two children (MBK and RMK) to Sri Lanka where the parents of both Respondent and Petitioner also reside.  Previously, in July 2013, Petitioner and Respondent became United States citizens.  Both MBK and RMK were born in the United States before the family moved to Sri Lanka and, therefore, both are natural United States citizens.

Before their move Petitioner and Respondent extended great efforts in anticipation of the move, including to retain an architect to remodel a family residence there and to obtain the necessary authorization to move their two family dogs to Sri Lanka.  They also sold or shipped to Sri Lanka their furniture and a great majority of their family possessions.

Upon their arrival in Sri Lanka the parties enrolled MBK and RMK in school.  For more than a year after their arrival Petitioner and Respondent spent time living with both sets of parents while they renovated a family home on property owned by

Petitioner's parents.  The parties expended considerable time and financial resources on that renovation.  By the beginning of July 2015, almost two years after the family arrived, the renovations of the family home were complete and the family was well-settled in Sri Lanka.

Petitioner and Respondent's marriage, however, had its difficulties both before and after the parties moved to Sri Lanka.  After a particular conflict with Petitioner in the late evening of July 3, 2015, Respondent left the family home with their children (and their passports) and went to the residence of Respondent's parents.

Two days later, on July 5, 2015, Respondent left Sri Lanka and flew to Oregon with the children without Petitioner's knowledge.  Although Petitioner saw the children on July 4, 2015, Respondent did not disclose that she was planning to take the children to the United States.  In the days after Respondent left Sri Lanka with the children, Petitioner acted quickly to learn where Respondent had taken the children.  He requested local law enforcement to perform a welfare check on Respondent and the children at the home of Respondent's parents, and he contacted the United States Embassy in Sri Lanka in an attempt to locate Respondent and the children.

On July 8, 2015, Respondent contacted Petitioner and informed him that she had taken the children to Oregon.  That

3 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

same day Petitioner informed the United States Embassy in Sri Lanka that he had located Respondent and the children in Oregon, and they were "safe and sound."

Throughout July and August 2015 Petitioner attempted to persuade Respondent to return to Sri Lanka with the children. As part of his efforts to persuade Respondent to return to Sri Lanka and to ensure that Respondent and the children were adequately supported while still in Oregon, Petitioner provided financial support to include assistance locating an apartment and automobile for Respondent and the children.

At no time relevant to these proceedings has Petitioner consented to Respondent's removal of the children from Sri Lanka. There is not any contemporaneous corroboration (such as an email message confirming a planned arrival in the United States) that Respondent's removal of the children was with Petitioner's consent. Moreover, Petitioner's urgent, contemporaneous attempts to locate Respondent and the children through local law enforcement and the United States Embassy in Sri Lanka in July 2015 unequivocally indicate Petitioner did not consent to Respondent's removal of the children from Sri Lanka at the time of the removal.

There has not been any authorization from any court with jurisdiction permitting the removal of the children from Sri Lanka.

4 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

**CONCLUSIONS OF LAW**

**I.   Standards**

In proceedings regarding a Petition under the International Child Abduction Remedies Act, 22 U.S.C. 9001, *et seq.*, Petitioner bears the burden to prove the following elements by a preponderance of the evidence:

A.   The country to which the petitioner seeks to return a child was the child's habitual residence at the time the child was removed.  *See Mozes v. Mozes*, 239 F.3d 1067, 1070-71 (9th Cir. 2001).  Whether the parents had a "settled intention" to abandon the prior habitual residence determines a child's habitual residence.  *Id.* at 1075-76.  Even in circumstances where that shared, "settled intention" does not exist, however, a country may be deemed a child's habitual residence if unequivocal and objective facts prove the child has acclimatized to the new country to a degree that the Court could "say with confidence that the child's relative attachments to the two countries have changed to the point where requiring return to the original forum would now be tantamount to taking the child 'out of the family and social environment in which its life has developed.'"  *Id.* at 1081 (quoting Elisa Perez-Vera, *Explanatory Report*, 3 Hague Conf. on Private Int'l L., Acts and Documents of the Fourteenth Session, Child Abduction 426, ¶ 11 (1982)).

B.   Removal of the child from the country of the child's

5 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

habitual residence breached the petitioner's custody rights under the law of the country of habitual residence. *Mozes*, 239 F.3d at 1070-71. Removal in breach of custody rights, also known as "wrongful removal," includes removing a child from her or his habitual residence before any custody order regarding that child has been entered by any court. *See* 22 U.S.C. § 9003(f)(2).

    C.  At the time of the removal the petitioner was actually exercising, or would have been exercising, custody rights. *Mozes*, 239 F.3d at 1070-71.

    D.  The child is under the age of 16.

    E.  In addition, Respondent asserts the affirmative defense of consent. Under that defense Respondent bears the burden of proving by a preponderance of the evidence that Petitioner consented to the removal and/or retention of the child at the time the child was removed or retained. *See Gonzalez-Caballero v. Mena*, 251 F.3d 789, 793-95 (9th Cir. 2001).

## II. Conclusions of Law

The Court reaches the following conclusions of law:

    A.  <u>Habitual Residence</u>. In October 2013 Petitioner and Respondent had a shared, settled intention to abandon the United States and to make Sri Lanka the children's new habitual residence for the indefinite future. Petitioner did not have any settled intention thereafter to once again make the United States the children's habitual residence. The evidence is insufficient

6 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

to show unequivocally and objectively that the children have sufficiently acclimatized since their return to the United States with Respondent in July 2015.  Accordingly, the Court concludes Petitioner has proved by a preponderance of the evidence that the children's habitual residence is in Sri Lanka.

    B.   <u>Breach of Custody Rights</u>.  Petitioner established by a preponderance of the evidence that Respondent's removal of the children from Sri Lanka breached Petitioner's rights of custody under the laws of Sri Lanka (the children's habitual residence), including Petitioner's right to determine the children's place of residence, by removing the children without Petitioner's consent and, in any event, before any custody order regarding the children had been entered by a court in Sri Lanka.  Thus, Respondent's removal of the children from Sri Lanka was "wrongful."

    C.   <u>Exercise of Custody Rights</u>.  The parties stipulated both Petitioner and Respondent were actually exercising custody rights at the time Respondent removed the children from Sri Lanka.  Accordingly, the Court concludes Petitioner was actually exercising custody rights at the time Respondent removed the children from Sri Lanka.

    D.   <u>Age of Children</u>.  The parties stipulated the children are under the age of 16.

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

E.  <u>Affirmative Defense of Consent to Removal</u>.  The Court concludes Respondent did not establish by a preponderance of the evidence that Petitioner consented to Respondent's removal of the children from Sri Lanka.

## CONCLUSION

For these reasons, the Court concludes the children were wrongfully removed from Sri Lanka by Respondent.  The Court, therefore, confirms its previous Order (#40) compelling Respondent to release the children to Petitioner for their prompt return to Sri Lanka.  The Court also grants Petitioner leave to file a petition for an award of attorney fees, costs, and expenses as directed on the record.

IT IS SO ORDERED.

DATED this 8th day of January, 2016.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

8 - FINDINGS OF FACT AND CONCLUSIONS OF LAW